IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CAROL WOOTEN, )
)
        Plaintiff, )
)
v. )
)
EPWORTH UNITED METHODIST )
CHURCH and the NORTH CAROLINA ) 1:06CV778
ANNUAL CONFERENCE, )
SOUTHEASTERN JURISDICTION, )
OF THE UNITED METHODIST )
CHURCH. )
        Defendants. )
_____)

MEMORANDUM OPINION

TILLEY, District Judge

This matter is before the Court on Defendant Epworth United Methodist Church's ("Epworth") Motion for Summary Judgment [Doc. # 26] and Defendant North Carolina Annual Conference Southeastern Jurisdiction, of the United Methodist Church's ("Conference") Motion for Summary Judgment [Doc. # 36]. For the reasons set forth below, Epworth's Motion for Summary Judgment [Doc. #26] is DENIED, and the Conference Defendant's Motion for Summary Judgment is GRANTED [Doc. #36].

I.

Plaintiff Carol Wooten initially filed a Complaint, alleging sexual harassment, gender discrimination, and constructive discharge in violation of Title VII of the Civil Rights Act, in the General Court of Justice, Superior Court Division, Orange

County, North Carolina. Ms. Wooten asserts that Andrew Oliver, an Epworth employee, "engaged in a pattern of sexual harassment, verbal abuse, and physical threats directed towards Plaintiff, and false statements to church members and staff about Plaintiff, that created a hostile and unsafe work environment." [Doc. # 57, ¶ 9]. On September 14, 2006, Defendants Epworth United Methodist Church and the North Carolina Annual Conference, Southeastern Jurisdiction, of the United Methodist Church (collectively "Defendants") timely removed the action to this Court.

The parties participated in a Rule 26(f) conference on October 12, 2006 and filed a Joint Rule 26(f) Report on October 31, 2006. An Order approving the Joint Rule 26(f) report was entered on November 2, 2006. Pursuant to the 26(f) Report and Order, the parties were allowed to conduct bifurcated discovery. In particular, the parties were allowed to conduct initial discovery only with respect to whether the named defendants constitute employers under Title VII. Discovery on this issue has closed, and defendants have moved for summary judgment on the grounds that they are not "employers" as that term is defined in Title VII.

II.

Summary judgment is proper only when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Cox v. County of Prince

2

William, 249 F.3d 295, 299 (4th Cir. 2001). An issue is genuine if a reasonable jury, based on the evidence, could find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Cox, 249 F.3d at 299. There is no genuine issue of material fact if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. Celotex, 477 U.S. at 322-23. In essence, summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence, and the analysis concerns "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

A.

The Conference has moved for summary judgment on the grounds that it was not Ms. Wooten's employer as that term is defined in Title VII.

1.

In the light most favorable to Ms. Wooten, the facts regarding the Conference are as follows. The *Book of Discipline of the United Methodist Church* establishes the organizational structure for the Methodist Church. Organizationally, the United Methodist Church is composed of the following: (1) local churches; (2) local churches are grouped by geographical area into Districts, which are led by a District Superintendent appointed by the bishop; (3) Districts are then grouped into Regional Annual Conferences; and (4) Annual Conferences are then combined to

3

form Jurisdictional Conferences (within the United States) or Central Conferences (outside the United States).

Conferences are administered by bishops, who are elected. Bishops appoint district superintendents and assign pastors to each local church. The superintendent has the authority "to hold the pastor accountable, to encourage, motivate, cajole, working through the pastor, to see that the congregation adheres to The Discipline." [Smith Dep. at 104]. However, the district superintendent does "not direct [the pastor of the church] in his day-to-day activities at the church." [Smith Dep. at 108].

The local church is "composed of lay members and [is] governed and operated by internal councils, committees, and other bodies constituted in accordance with the *Book of Discipline*." [*Book of Discipline*, ¶ 244]. One of these local church bodies is the charge conference. The *Book of Discipline* explains that the charge conference is the "connecting link between the local church and the general Church." [Id. ¶ 247]. The charge conference "is made up of members of the church council, clergy who hold their membership in that charge, and any others designated by the *Book of Discipline*." [Id. ¶ 246]. The district superintendent determines the time and place of the annual charge conference meeting and generally presides at the meeting, although the district superintendent may appoint an elder to preside. [Id.]. A variety of issues may be discussed at a charge conference including budgetary information, such as pastor salary and the

4

apportionment that the local church will contribute to the general Church. In addition, the Conference has a health insurance plan and a pension plan that is available to employees of the individual churches in the conference.

2.

The determination of whether the Conference was Ms. Wooten's employer is a matter of law. Cilecek v. Inova Health Sys. Servs., 115 F.3d 256, 261 (4th Cir.1997) (explaining that whether undisputed facts establish statutory employee status for Title VII is a question of law). Ms. Wooten claims that the Conference was her employer "because it exercised sufficient control over [Ms. Wooten's] employment through its superintendency over Defendant Epworth United Methodist Church and through its authority to direct the pastor as administrator" of Epworth. [Doc. # 45, at 13]. In her response to the Conference's motion for summary judgment, Ms. Wooten discusses the "joint employer" theory to support a Title VII cause of action against the Conference. [See Doc. # 45, citing Thompson v. Estate of Kenan, No. 1:99CV102, 2000 U.S. Dist. LEXIS 87578 (M.D.N.C. Feb. 16, 2000) (applying "joint employer" theory to determine whether any of several related entities had an employment relationship with plaintiff)].

Under the "joint employer" theory, several entities may be found to have "jointly exercised the requisite amount of control for Title VII liability to hold." Takacs v. Fiore, 473 F. Supp. 2d 647, 656 (D. Md. 2007) (quoting Williams v. Grimes Aerospace Co., 988 F. Supp. 925, 935 n.2 (D.S.C. 1997)). In her

5

response brief, however, Ms. Wooten asserts that the Conference and Epworth are not distinct legal entities. Rather, she asserts that Epworth "is a part of" the Conference. Based on these allegations, it appears that the "integrated employer" theory rather than the "joint employer" theory is most applicable to Ms. Wooten's claims.

Under the "integrated employer" theory, several entities "may be considered so interrelated that they constitute a single employer." Hukill v. Auto Care, Inc., 192 F.3d 437. 442 (4th Cir. 1999). The Fourth Circuit has not specifically adopted a test to apply in these situations. Johnson v. Flower Indus., Inc., 814 F.2d 978, 981 (4th Cir. 1987) (declining to adopt a mechanical approach but stating that the relevant inquiry is whether there is "parent domination" of the subsidiary); Hukill, 192 F.3d at 442, n.7 (noting that the Johnson court declined to adopt the four factor "integrated employer" test ). However, the Hukill court applied the following factors to determine whether various entities were an "integrated employer": (1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control. Hukill, 192 F.3d at 442. As the Fourth Circuit explained in Hukill, the "'integrated employer' test instructs a court to determine '[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination.'" Id. at 444 (quoting Trevino v. Celanese Corp.,

6

701 F.2d 397, 404 (5th Cir.1983).[1]  Thus, in order for the Conference to be considered Ms. Wooten's employer, there must be evidence that the Conference "made the final decisions regarding employment matters related to" Ms. Wooten.

In support of her argument that the Conference was her employer, Ms. Wooten focuses on the hierarchical nature of the United Methodist Church, particularly the annual charge conference.  Ms. Wooten asserts that the Conference assigns pastors to churches, and that through the charge conference the Conference monitors the performance of the pastor by ensuring that the local church adheres to the *Book of Discipline* and reviews the annual budget of the local church.  Although the evidence demonstrates that the district superintendent, and thus the Conference, has general awareness and oversight regarding the activities of the local church, the undisputed evidence is that neither the Conference nor the district superintendent manage or are even involved in the day-to-day operations of the church.

With respect to Ms. Wooten's employment in particular, there is no evidence in the record that the Conference "made the final decisions regarding employment

---

[1] Ms. Wooten asserts that case law discussing the "joint employer" theory and/or the "integrated employer" theory is not applicable to this case because those cases were decided on the basis of the limited liability that corporations enjoy, and Epworth is not a corporation.  However, the "integrated employer" test has been applied in non-corporate settings.  Cox v. St. Stephen's Episcopal Church, No. C A 206-0272-DCN-RSC, 2006 WL 2668782, at *4 (D.S.C. Sept. 14, 2006) (applying integrated employer test and rejecting plaintiff's claim that local "church should be considered an integrated employer with the Diocese").

7

matters related to" Ms. Wooten. In fact, to the contrary, the district superintendent over Epworth testified in her deposition that Rev. Cobb did not consult her with regard to any employment issues involving Ms. Wooten. [Smith Dep. at 44-46]. The only time Ms. Wooten was discussed in a meeting between Rev. Cobb and the superintendent occurred when Rev. Cobb sought advice regarding how to handle the situation between Mr. Oliver and Ms. Wooten. [Id.] Moreover, even that conversation did not involve a discussion of Ms. Wooten's employment; rather, Rev. Cobb was seeking advice regarding how to remove Mr. Oliver from Epworth. [Id.] In sum, there is nothing in the record suggesting that the Conference exerted any control over Ms. Wooten's employment.

On these facts, it can be determined as a matter of law that the Conference Defendant was not Ms. Wooten's employer. As such, the Conference Defendant's Motion for Summary Judgment is GRANTED.

B.

Epworth seeks summary judgment on the grounds that it did not have the requisite number of employees to subject it to Title VII liability. Title VII of the Civil Rights Act of 1964 applies to any employer who "has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b).

The conduct that Ms. Wooten has alleged constitutes a violation of Title VII occurred between December 2003 and April 2005. Thus, the "current" and

8

"preceding" years for purposes of the Title VII claim are 2002 to 2005. Epworth asserts that it did not have the requisite 15 or more employees for twenty weeks in each of those years. In particular, Epworth asserts that (1) in 2002, it had no more than 12 employees employed for more than 20 weeks; (2) in 2003, it had no more than 12 employees employed for more than 20 weeks; (3) in 2004, it had no more than 14 employees employed for more than 20 weeks; and (4) in 2005, although it had 15 or more employees for at least 20 weeks, there were not twenty calendar weeks in 2005 in which at least 15 of those employees were employed at the same time.

Epworth bases its calculations on the "payroll method" utilized by the Supreme Court in <u>Walters v. Metro. Educ. Enters., Inc.</u>, 519 U.S. 202, 205-207 (1997). Although the <u>Walters</u> Court applied the payroll test in that case, it did not adopt the payroll method as the sole basis for determining whether a putative employer satisfied the 15 employee for 20 week minimum required for Title VII application. Rather, in determining how to account for part-time employees, the <u>Walters</u> Court was choosing between the payroll method, which considers simply "whether the employer has an employment relationship with the individual on the day in question," and the method that had been utilized by the Seventh Circuit, which counted an employee "only on working days on which the employee is actually receiving compensation from the employer." <u>Id.</u> at 204-06.

The <u>Walters</u> Court noted that "an individual who appears on the payroll but

9

is not an 'employee' under traditional principles of agency law, would not count toward the 15-employee minimum." Id. at 211-12. Thus, the Court specifically held that inclusion on payroll does not necessarily equate to employment if the individual would not be an employee under traditional agency principles and reiterated that the "ultimate touchstone under § 2000e(b) is whether an employer has employment relationships[2] with 15 or more individuals." Id. at 211-12.

1.

In addition to the employees listed on the Epworth payroll, Ms. Wooten asserts that Epworth also had an employment relationship with Mr. Oliver and Cheryl Brown, interns from Duke Divinity School. Ms. Wooten acknowledges that these individuals were not listed on the Epworth payroll, but asserts that Mr. Oliver and Ms. Brown should be considered employees because they worked at Epworth and Epworth paid their tuition at Duke Divinity School as compensation for their

---

[2]In determining whether an individual has an employment relationship with a putative employer, the Fourth Circuit considers the following factors: (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties. Garrett v. Phillips Mills, Inc., 721 F.2d 979, 982 (4th Cir. 1983) (applying factors to determine whether an individual is an independent contractor or an employee).

10

services.  Ms. Wooten cites <u>Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.</u>, 6 F.3d 211 (4th Cir. 1993) for the proposition that an individual may be considered an employee even if he does not receive direct remuneration from the employer.

In <u>Haavistola</u>, the plaintiff was a volunteer firefighter who brought a Title VII discrimination case against the defendant Community Fire Company.  The district court granted summary judgment on the grounds that as a volunteer who received no direct remuneration, Ms. Haavistola was not an employee covered by Title VII.  The Fourth Circuit listed the benefits Ms. Haavistola received as a result of her membership with the Community Fire Company including, among other things, state funded disability pension, survivors' benefits for dependents, group life insurance, and tuition reimbursement for courses in emergency medical and fire service techniques.  <u>Id.</u> at 221.  The Fourth Circuit held that these benefits precluded the entry of summary judgment because they created an issue of fact regarding "whether the benefits represent indirect but significant remuneration" or "inconsequential incidents of an otherwise gratuitous relationship."  <u>Id.</u> at 222.

In this case, Epworth stated in its Answer that Mr. Oliver "began working at Epworth in 2003 as a Field Education Intern."  [Doc. # 55, ¶ 9].  Epworth further stated in its Answer that "Rev. Cobb notified Oliver in early 2005 that his internship would not be renewed and that Oliver <u>left the Church staff</u> in April, 2005." [Doc. #55, ¶ 22] (emphasis added).  Epworth has also stated that Mr. Oliver was at Epworth for most of 2004, except for a period of time in the summer

11

of 2004. [Doc. #55, ¶ 19]. Thus, it appears that Mr. Oliver was an intern at Epworth for most of 2004. In addition, Epworth paid $13,200.00 to the Field Education Office of Duke Divinity School in February 2004. [Doc. # 46 at 5]. On these facts, it cannot be said, as a matter of law, that Mr. Oliver was not an Epworth employee for at least 20 weeks during 2004. A finder of fact must decide whether the payment of Mr. Oliver's tuition, as well as any other benefits he may have received as a result of his internship with Epworth, constitute "indirect but significant remuneration" or "inconsequential incidents of an otherwise gratuitous relationship."

As noted above, the Epworth payroll records indicate that 14 individuals were on the Epworth payroll for at least 20 weeks during 2004. In the event, a fact finder were to conclude that Mr. Oliver received "indirect but significant remuneration" for at least 20 weeks during 2004, then Epworth would be an employer under Title VII.

2.

In addition, Ms. Wooten asserts that the individuals who work at the Epworth United Methodist Preschool (the "Preschool") should be considered employees of Epworth for purposes of Title VII. Epworth asserts that individuals who work at the Preschool should not be counted as employees of Epworth.

Epworth asserts that while the Preschool "operates on the premises" of Epworth, it is "organizationally separate from the Church and its employees." In

12

support of its argument, Epworth cites to the fact that the Preschool "has a separate federal income tax identification number, maintains its own budgets, funds and personnel functions, and pays rent to [Epworth] for use of the Church's facilities pursuant to a written 'Use of Shared Space Agreement." [Doc. # 27 at 8]. In addition, Epworth proffers an opinion letter from tax counsel, dated December 18, 1989, in which counsel opines that Epworth and the Preschool are "affiliated entities" that are "distinct with regard to various tax and fiscal operations."

In response, Ms. Wooten asserts that Epworth operates the Preschool and that Preschool employees should be counted. In support of her argument, Ms. Wooten notes that according to its by-laws, the Preschool is "under the jurisdiction of the Administrative Board [now known as the Church Council]" of Epworth. [Doc. # 40 at 3]. The Epworth Charge Conference appoints the voting members of the Preschool Committee, and the Preschool Committee is appointed in the same way as the other committees of Epworth. The Preschool is identified as one of the Nurturing Ministries of Epworth. The Epworth Newsletter reports news of the Preschool. The Preschool Director attends Epworth Staff Meetings and prepares an annual report for the Charge Conference. Ms. Wooten contends that each of these facts are significant, particularly when compared to the relationship Epworth has with a Montessori school that leases space from Epworth. Finally, Ms. Wooten notes that the Preschool employees are listed as Epworth employees on an annual Workers' Compensation Request for Audit Information.

13

Epworth identifies evidence that suggests individuals working at the Preschool are not Epworth employees. However, Ms. Wooten identifies evidence that suggests the Preschool is merely a ministry of Epworth and not a separate employer under Title VII. At this point, there is not sufficient information to make this determination. Rather, there must be further development of the facts in order to decide whether the Preschool is a separate entity or simply a part of Epworth.

For example, the tax opinion letter proffered by Epworth (which is, by no means, determinative of this issue) is based, at least in part, on the fact that the Preschool paid "rental equivalent or higher than other area preschools for use of the facilities." As noted above, this letter was prepared in 1989, and there is no evidence that the same conclusion could be drawn today. In addition, the Agreement for Use of Shared Space, which set the minimum yearly assessment at $12,500.00, was executed in 1997, and there is no evidence in the record that this minimum has been increased at all within the last ten years or reviewed annually by the Church's Finance Committees, as required by the Agreement. Moreover, there is no information in the record regarding the rental rate the Montessori school pays for use of Epworth facilities.

Similarly, Epworth asserts that the cost of the Workers' Compensation insurance for Preschool employees, which is paid by Epworth, is recouped as part of the annual fee the Preschool pays pursuant to the Agreement for Use of Shared Space. The parties have not presented any evidence regarding what portion of the

14

annual fee is allocated to rent, what portion is allocated to cover the cost of insurance, and whether the portion allocated to insurance is sufficient to cover the actual cost of that insurance.

On the facts presented, it cannot be determined as a matter of law that the individuals who work at the Preschool should not be considered Epworth employees for purposes of Title VII. Epworth's Motion for Summary Judgment is DENIED.

### III.

For the reasons set forth above, Defendant Epworth United Methodist Church's Motion for Summary Judgment [Doc. # 26] is DENIED, and Defendant North Carolina Annual Conference Southeastern Jurisdiction, of the United Methodist Church's Motion for Summary Judgment [Doc. # 36] is GRANTED.

This the day of July 11, 2007

   /s/ N. Carlton Tilley, Jr.
United States District Judge